Thank you, Your Honor. May it please the Court, Kevin Lafke on behalf of Plaintiff Sherrill Ford-Torres in this employment and fraudulent transfer case. Mr. Lafke? Approximately six months after this lawsuit was filed, as you know, all of the defendants to that initial action then engaged in a chain of events that caused all of the income that went to Cascade Valley, the predecessor company, to then be changed and flow to a new company, Northwest Cascade, that was controlled by the same person, Robert O'Shea, and a portion of whose income earned then went back to Jayden and its principals, Robert's brothers, Dennis and Tom O'Shea. And I just want to make... I want to make a point about that, Judge, that the asset is the right to hold this contract. And the fraudulent transfer law in Oregon is construed and written very broadly. And that's the first point I want to make today, is that the debtor, and in this case everyone's a debtor, because she's brought a bully complaint and filed a lawsuit against all these defendants. So under the Oregon Fraudulent Transfer Act, every defendant is defined as a debtor, because a debtor means a person against whom a creditor has a claim. It's just that simple. So Jayden's a debtor, all the brothers are debtors, Cascade's a debtor. Now they want to focus the argument on whether there was a transfer as opposed to, oh, a contract ended and a new contract started. But again, this is a really important point. The Fraudulent Transfer Act states if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor. So think about that, okay? There's a new obligation incurred that's now from Northwest Cascade to Jayden back and forth. It's a mutual contractual obligation. And there is a transfer. There was a prior obligation from Jayden to Cascade Valley. And now that same contractual right is transferred then to the new entity, Northwest Cascade. And all of these people- I'm having a tough time still, Counselor, trying to determine how Jayden became the debtor. Jayden was sued. And so- Our fraudulent transfer law, it's just that simple. A debtor means a person against whom a creditor has a claim. Ford Torres is a creditor of Jayden because she sued Jayden. Well, just because they sue them doesn't mean they have a claim. A claim means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, okay? So- Well, I'm not even suggesting it's contingent. I mean, I'm suggesting that at that point in time, you're saying that any time in Oregon somebody sues somebody, they automatically become a debtor to that person. And I didn't find anything in the statutes which would suggest it. It certainly doesn't happen in Idaho that just because you get sued, you automatically become the debtor. Well, I don't know about the law in Idaho, Judge, but in Oregon, and I didn't finish all the- I mean, all we have is a suit. Right. We didn't even prove anything yet. But a claim means, and it also includes the language disputed. So a disputed claim is a claim under the Oregon Fraudulent Transfer Law. And so, absolutely, if a plaintiff files a lawsuit against a defendant, that's a disputed claim for payment of money, and that's what plaintiffs- What's the remedy under the Oregon Transfer Law? The remedies are quite broad. You could- Avoid, attach, rejoin, or money judgment, right? Correct. Correct. And you could have a constructive trust over the contractual right to payment, for instance, as well. I guess that would come under some type of injunctive relief. But there's- Didn't the Cascade-Jayden contract expire, and then a new contract was entered into with Northwest? You know, it's interesting. There isn't any contract in the record here from 06. The contract in the record between Cascade Valley and Jayden apparently expired at the end of 05, the written contract. And then in 06, there doesn't appear to be anything in writing, although we know Cascade Valley kept doing business, and Jayden kept engaging in this work with them. And then starting in January 07, you have Northwest Cascade come on the scene. And I think, Judge, one important point to remember about the transfer and the obligation is remember that monies that Jayden owed to the first entity, Cascade Valley, were paid to the new entity, Northwest Cascade, for work that the first entity, Cascade Valley, did. So this is as insider as it gets. But did you sue Northwest Cascade? After we became aware of its existence, yes. In depositions, we learned of the establishment of this new entity in the second amended complaint, which is the one that summary judgment was rendered on, sued Northwest Cascade. So all of the defendants are party to this case. And again, the claim in the second amended complaint was alleged very broadly. The statute, again, Judge, with all respect, it is a claim under at least Oregon's version of the Uniform Fraudulent Transfer Act because it includes the word disputed. So even so, has Oregon already interpreted the idea that a simple lawsuit against somebody means it's disputed? I don't know of any case in which that has specifically been held. But it seems to me that your final argument that you're really making to me is if in any time there are transfers made from one company to another, that at that particular point when they're transferred, if anybody sues them in the meantime, automatically they have some claim. Even if they haven't got a ghost of a chance to make it. I'm trying to see if there's any Oregon law to say that. I think Greninger v. Cromwell, the case cited in the blue brief, argues for a very expansive interpretation of what an asset and a claim can be under the Oregon Uniform Fraudulent Transfer Act. And I would say the answer to your question, when it's presented on a summary judgment motion in the light most favorable to the non-moving party under these facts where you have these insiders colluding to take an asset and move it potentially out of the reach of the plaintiff when she has sued all of the involved individuals and corporate entities is yes. That the deposition testimony of all the brothers is undisputed that they knew of plaintiff's claim at the time they engaged in this transfer slash incurring of an obligation. And under those facts, in the light most favorable to the plaintiff, the jury ought to be able to hear that evidence and make a determination. Well, I guess that's what we're really talking about, aren't we, Counselor, because the district court said that in the light most favorable to your client, there is no claim here. She did judge, and that's the second argument that I want to touch on just briefly in my remaining, and that is this issue of joint and indirect employment. You know, Oregon does not recognize the indirect employment. Is that correct? Well, it's interesting, not in any reported case on a 659A slash Title VII type of theory. They have under workers' comp, they have under employer liability law, but the Boley complaint, the Boley determination, which is part of the defendant's supplemental excerpt of record at page 102 and 103, talks about the fact that the Boley investigator finds that there wasn't a joint employment relationship. So that certainly infers that the Boley, who interprets the state law of Oregon, thought that that was at least a legal possibility, but under these facts, did not find that there was a joint employment relationship. I think the Boley investigator said, in fact, in spite of the fact that they kept this money flowing knowing that he sexually harassed his employees, we still don't find there's a joint employment relationship, and that infers that Oregon would recognize such a relationship. Well, really, if we go under Oregon law, since the only cases I saw said that the indirect employer liability would only be in employer liability law cases, and joint employer and compensation cases, if I'm going to get this theory into discrimination cases, am I not then establishing that in Oregon? It's been recognized. It's not been held to not be in place. It's been cited by Boley, and we know it applies under Title VII, and both claims under state law and Title VII were made in this case, and I know my seconds are up, but just one point I want to cite you to, page 3 of Plaintiff's Declaration, which is the excerpt of record of 59, where Tom O'Shea, the principal of Jayden, is telling the plaintiff that she did not need to worry because she would not lose her job, and that, I think, is the best evidence and the light most favorable to the plaintiff that there is this indirect-slash-joint employer relationship. Thank you. Thank you, Mr. Flafke. We'll hear from the employer. May it please the Court, Dave Sweeney, representing Jayden, Inc., and Dennis O'Shea, and Thomas O'Shea. I part company distinctly with the appellant. He's asserted, I believe for the first time, that everyone, every defendant in this case is a debtor, and the basis for that, I believe I heard this morning, was because a UFTA claim was asserted. The fact that a claim is asserted under the Uniform Fraudulent Transfer Act doesn't make you a debtor. You then, the Court then must determine under the UFTA whether you are a debtor or whether you are a transferee. You're not ipso facto a debtor simply because a claim is made. You then must make that factual determination as a court. Now, here he indicated that Jayden paid money to Northwest that was owed to Cascade. Is there evidence of that? No. The evidence is that Robert O'Shea received severance pay. Robert O'Shea asked Jayden to pay that to Cascade so he could begin his own company. There is, I believe, I don't recall what the evidence is, Your Honor, with respect to any subsequent payments. But what I can tell you is that in order, under a UFTA claim, there must be a transfer. And what is it here that is alleged to be transferred? The transfer here is alleged to be the contract from Jayden to Cascade that the appellant says they transferred it back to Jayden and then Jayden retransferred it to Northwest Cascade. Well, the significant problem with that is that it never happened, that there is no evidence whatsoever of a transfer of the Jayden-Cascade contract from Cascade back to Jayden and then flipping it around and transferring it to Northwest Cascade. Cascade went out of business. Robert O'Shea went broke. He filed for bankruptcy. A new company was started in Northwest Cascade. A new contract was then entered into between Jayden and Northwest Cascade. The point is that Jayden cannot be a transferee because nothing was ever transferred to them. Nothing was ever transferred to them, so they couldn't transfer it back. The theory behind the UFTA is if somebody gives you a car for a dollar that you didn't receive equivalent value for it, well, the law says, okay, we're going to put a judgment against you, so you've got to give that car back. There was nothing here to give back. This was Jayden's contract. But I heard counsel say that there was money owed by Jayden to Cascade that Jayden then turned around and paid to Northwest. So I suppose his argument is that that obligation of Jayden to Cascade was an asset that was transferred to Northwest. Well, let's assume that that's the case. That would be money owed from Jayden to Northwest that was given to Cascade. Now, I don't recall what the factuals are. Other way around. Other way around, correct. What he suggests is Jayden owed Cascade money on this contract that they had with Cascade to make, to get these contributions, and then they did go bankrupt or whatever they did, which is your best fact, but that's why I question it further. Then they paid the money to Northwest Cascade instead of paying it to Cascade, who had gone bankrupt and not had the money in the bankruptcy. Well, in that situation, there was nothing transferred to Jayden. You have to be a transferee in order for a judgment to be entered against you. The money was Jayden's at all times. It was not paid to Cascade and then repaid to Northwest Cascade. We're not talking about the money. We're talking about the claim. The claim of Cascade against Jayden was transferred back to, he's saying, to Jayden and then back to Northwest Cascade. There was no claim. Why did they pay the money to Northwest Cascade then? Northwest Cascade performed contract services for Jayden. So there was nothing that was ever transferred to Cascade that then came back as a transferee to Jayden. Jayden is not a transferee, and with respect, you need to be a debtor. Dennis O'Shea and Thomas O'Shea were never debtors in this action, yet they were personally named in this lawsuit. There's not a shred of evidence that Dennis O'Shea or Thomas O'Shea were ever debtors here. Doesn't this turn on this contract to do to raise funds for Kids Wish Network? Isn't that the one that's being transferred? Well, that's what is alleged to be transferred. You're correct, Your Honor. There was a contract between Jayden and Cascade to do telemarketing for Kids Wish Network. The plaintiff has alleged that that contract was transferred back to Jayden and then retransferred to Northwest Cascade. That's their allegation. Jayden, Thomas, and Dennis are not a non-transferee party. They are parties to the transfer. They are the transferees of the contract from Cascade and are the transferors of the contract to Northwest. And you're saying this never happened? Absolutely. That's what I'm saying. And there's no evidence in the record. In terms of what is in the record, what's your strongest showing? Well, the evidence is that there is no transfer of this contract from Cascade back to Jayden, simply no evidence in there. But the problem comes, and I guess Judge Weiss' questions are very, very good, why pay the new person who you're contracting with the sums that were due the past contracting person if you're not transferring the asset to them? Because you're not transferring exactly what was alleged to be transferred, the contract. Jayden always had the power to give the right to do work for it, this telephone solicitation for Kids Wish Network to anyone. It wasn't an exclusive contract. I think we're talking past one another, and let me see if I can clear it up at least in my own mind. Let's assume for the moment that Jayden has a contract with Cascade, and Cascade has earned some money under that contract that Jayden hasn't paid yet. There's a claim made by somebody against Cascade for wrongful conduct that occurred at Cascade, and Jayden and Cascade get together and say, gee, if we, Jayden, pay you, Cascade, it's just going to go to this injured person. So why don't we pay the money to your new company rather than Cascade to avoid paying this injured party? Assuming those were the facts, is there a problem? Yes, I think there is. And here's the problem. The UFTA is very clear that you either need to be a transferee. There is no aider and abetter liability under the UFTA. Now, in that situation, if they were in cahoots and said, okay, we're going to do an end round around here, then Jayden, as the middle man in this situation, you could allege that they aided and abetted in this scheme, but there is no aider and abetter liability under the UFTA, because you must be a transferee in order for a judgment to be rendered against you. They did sue Northwest Cascade, and they have every right to sue Northwest Cascade or Robert O'Shea, but Jayden is not a transferee under the UFTA. And under your example, Your Honor, they're still not a transferee under the UFTA. That's the issue here that's so plainly set out in the appellant's brief and their arguments, that they're just they can't get there from here because Jayden has never been a transferee. Is there evidence that Jayden owed Cascade money that Cascade, that Jayden paid to Northwest? I apologize, Your Honor. I don't recall the exact sequence there, and I don't want to mistake the record. So it's particularly glaring here, which was why we filed a cross appeal here, that there cannot be any evidence, there is no evidence, particularly with two of the defendants here, the personal liability of Dennis O'Shea and Thomas O'Shea, who are not debtors. And a claim filed against them under the UFTA doesn't magically make them debtors. So it's our assertion that the claim was fatal from the inception, and it was fatal from the inception here because Jayden was never a transferee.  I'm just going to say that it's not the best we can do. But isn't the best we can say, Judge, tell us why you did what you did? That's certainly a very clear option, because the instruction is that the best we can do. I mean, we can't suggest absolutely no, because he's made a determination or she, I forget, has made a determination. We just don't know why. That's correct, Your Honor. A remand would be appropriate. And frankly, there are many times situations where the good old trial judge, having been in their shoes once or twice myself, understands what the situation is here and understands that they've got on summary judgment to go where they've got to go, but just doesn't believe that the plaintiff or the plaintiff's lawyer ought to pay out money on Rule 11 for bringing the suit because it just smells bad. That's certainly a possibility, Your Honor. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will hear, sir. Without argument, may I cite to the record on the question asked? Why don't you fill out a sheet, which the deputy clerk will give to you. Make three copies and one for your opponent. Yes, sir.
judges: Whyte, O'scannlain, Smith M.